MID-ATLANTIC APPLIANCES, INCORPORATED, A CORPORATION v. JOHN W. MORGAN. WASHINGTON WHOLESALERS v. JOHN W. MORGAN. SOUTHERN WHOLESALERS, INCORPORATED, A CORPORATION v. JOHN W. MORGAN.

December 1, 1952.

Record Nos. 3998, 3997, 3999.

Present, All the Justices.

The opinion states the case.

*Young & Kabler* and *Earl F. Wagner,* for the plaintiffs in error.

*John Barton Phillips* and *Henry B. Crockett,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

On April 11, 1951, plaintiff in error, Mid-Atlantic Appliances, Inc., a corporation, filed the following notice of motion for judgment against John W. Morgan:

"The plaintiff, Mid-Atlantic Appliances, Inc., a corporation, moves the Court for judgment against the defendant John W. Morgan for Four Thousand Twenty-nine Dollars and Forty Cents ($4,029.40) due the plaintiff upon defendant's contract, for that:

"On or about the 21st day of March, 1951, defendant, President and a Director of Grant's, Inc., a Virginia corporation, 3536 Mt. Vernon Avenue, Alexandria, Virginia, promised and agreed to assume and pay in full the plaintiff's open account claim against said Grant's, Inc., in the amount of Four Thousand Twenty-nine Dollars and Forty Cents ($4,029.40) for and in consideration of the following:

"1. that plaintiff withhold suit against Grant's, Inc., upon its, the plaintiff's, open account claim, suit then being imminent.

"2. that defendant be given voting control of said Grant's, Inc., through transfer to him of the share holding in said corporation of Margaret Grant. The condition of defendant's promise was that he, the defendant, would assume voting control of Grant's, Inc., and assume personally and pay the existing obligation to the plaintiff, if after ten days from said 21st day of March, 1951, a purchaser had not been found who would buy defendant's entire interest in Grant's, Inc.

"Pursuant to the agreement and understanding, said share

holding of Margaret Grant was deposited in escrow to be delivered to defendant at the end of ten days, in order that defendant might assume voting control in the event that he had not in that time sold his interest. And further pursuant thereto, plaintiff corporation refrained from instituting legal action against Grant's, Inc. Defendant has not however accepted delivery of said share holding, or assumed voting control of Grant's, Inc., nor has he paid the plaintiff corporation's claim as he had promised to do, nor has any purchaser, in said ten day period or thereafter, purchased the interest of defendant in Grant's, Inc. And defendant has refused, and still refuses, to pay or personally endorse the obligation of the said Grant's, Inc., to plaintiff.''

On the same day plaintiffs in error, Washington Wholesalers and Southern Wholesalers, Inc., filed separate notices of motion for judgment against Morgan, based upon exactly similar causes of action. The only difference was in the names of the respective plaintiffs and the amounts sought to be recovered.

In response, Morgan filed in each case a plea of the statute of frauds, setting out that the promise and undertaking alleged in the notice of motion was a promise to answer for the debt of another, and that ''no promise, contract, agreement, representation, assurance, or ratification in respect of or relating to the said supposed cause of' action in the said notice of motion for judgment mentioned, nor any memorandum or note thereof, was or is in writing, or was or is signed by the said defendant or his agent.'' Code of Virginia, 1950, § 11-2 (4).

It was stipulated by counsel for the parties that the alleged promise of Morgan was not in writing, and ''that the defendant would admit that there was a promise solely for the purpose'' of considering the issue raised by his plea. Since the same question of law was involved in each proceeding, the cases were heard together under an agreement that they were to be subject to like determination.

Upon consideration of the notice of motion, the plea of the statute of frauds, and the terms of the stipulation, the trial court held that since the notice failed to ''allege that the original liability was extinguished by a novation, or that, as a result of any promise by Morgan, the parties released Grant's, Inc., from its liability,'' it was of opinion that ''The pleadings set up

cases based upon collateral and not original promises, and, therefore, come within the statute of frauds." It accordingly sustained the plea of the statute of frauds, and dismissed the three cases.

The sole error assigned was that the court erred in its ruling and judgment.

Plaintiffs in error contend that defendant's promise was an original independent undertaking on his part and given with the objective of direct benefit to himself as a consideration of the promise, and was, therefore, not within the statute of frauds. They argue in this court, for the first time, that whether or not the promise was given for the direct benefit of the promisor was an issue of fact to be determined by a jury from all the surrounding circumstances.

██ Numerous cases coming within that branch of the statute of frauds here under consideration have been before this court and the courts of other jurisdictions. The broad statements and general expressions used in the various decisions with reference to the particular facts involved in the individual case, and the subtle distinctions sometimes made, present a lack of uniformity of views as to the effect of a new consideration on a promise to answer for the debt of another. However, in Virginia, we have consistently followed the basic rule stated in *Noyes* v. *Humphreys,* 11 Gratt. (52 Va.) 636, 643: "Every collateral promise to answer for the debt, default or misdoings of another person, is within the statute, and void if not in writing; but original undertakings need not be in writing, not being within the statute. The difficulty is in determining under which head the undertaking in any particular case is to be classed."

██ Reviewing the above case and a number of other cases, Judge Burks, in *Way* v. *Baydush,* 133 Va. 400, 408, 112 S. E. 611, in considering the difference between a collateral and an original undertaking, said this:

"In *Noyes* v. *Humphreys,* 11 Gratt. (52 Va.) 636, the prior cases in this jurisdiction are cited and it appears from them that the holding in this jurisdiction is that if the original contractor remains liable and the undertaking of the new party is merely that of surety or guarantor, the undertaking of the latter is collateral and within the statute of frauds. We do not propose to depart from that holding in this case."

In *Friedlin* v. *Crockin,* 122 Va. 521, 95 S. E. 432, the owner

of property leased it to a corporation. Before the corporation took possession under the lease, its stockholders determined to dissolve the corporation and the lessor was notified that her property would not be occupied under the lease. The lessor claimed that one of the stockholders of the corporation verbally promised that he and the two other stockholders would be responsible for the rent until another tenant could be found for the property. The lessor brought suit against the stockholders as individuals and upon their joint promise to be responsible for the rent. The lessor did not release the corporation, the original debtor, from its obligation, nor waive any of her legal rights to subject the assets of the corporation to her debt. It was held that the alleged promise or promises by the stockholders to pay the debt of the corporation was collateral and not original, and under the statute of frauds no action could be brought upon their promise, in the absence of writing signed by those sought to be charged thereby.

This rule was quoted and approved in the recent cases of *Alessandrini* v. *Mullins,* 178 Va. 69, 73, 16 S. E. (2d) 323 and *Lawson* v. *States Construction Co.,* 193 Va. 513, 517, 69 S. E. (2d) 450.

In the *Alessandrini Case, supra,* there was a conflict of evidence as to whether the promise relied upon by the plaintiff was an original, independent undertaking on the part of the defendant, or merely a collateral undertaking to satisfy the debt of a third party. We held that the jury in resolving the conflict in favor of the plaintiff established that the promise relied upon was an original promise, and, therefore, the statute of frauds was not applicable.

In the *Lawson Case, supra,* 193 Va. 518, we said the evidence did not establish either a direct or a collateral promise by States Construction Company to pay Lawson. In that case, 193 Va. 520, we find this:

"By the weight of authority it is held that 'if no independent consideration is present, it is requisite that credit should be given exclusively to the promisor and that, if any credit is given or any liability attaches to him for whose benefit the promise is made, the promise is collateral and within the statute, and this is so, although the collateral undertaking may have been the principal inducement to the delivery of the goods or the

performance of the services.' 37 C. J. S., Frauds, Statute of, § 20 at p. 527.''

"A promise made by one person to pay the existing debt of a third person is not rendered independent of the original obligation so as not to be within the statute of frauds by the mere fact that it is based upon the creditor's forbearance to sue the debtor, or to attach property of the debtor in which the promisor has no personal interest although the promise was made for the purpose of promoting the promisor's pecuniary interest.'' 49 Am. Jur., Statute of Frauds, § 76, p. 430.

Where the question arises as to whether the promise is original or collateral, when made to pay for goods delivered or to be delivered to another, the general rule seems to be that "the undertaking is collateral and within the statute if the person for whose use or benefit the goods are furnished is liable.'' 49 Am. Jur., Statute of Frauds, § 90, p. 445.

"According to the better view, the fact that there is an independent consideration for a promise is not conclusive that the promise is not one to answer for the debt of another within the statute of frauds. A promise is collateral and within the statute where the primary purpose of the promisor is to secure the debt of another, although a benefit actually inures to him because of his promise.'' 49 Am. Jur., Statute of Frauds, § 74, p. 426.

"The mere fact that the promisor has an indirect personal interest in the goods being sold to the third person does not take his oral promise to pay for them out of the statute. This rule is applied in the case of a promise by an officer or stockholder of a corporation to guarantee payment for services rendered or goods furnished the corporation. * * *.'' 49 Am. Jur., Statute of Frauds, § 92, p. 449.

In 37 C. J. S., Statute of Frauds, § 24, p. 533, this is said:

"Generally speaking, an oral undertaking by a person not previously liable, for the purpose of securing the debt or performing the same duty for which the person for whom the undertaking is made remains liable, is within the statute and must be in writing, and if the liability of the debtor is extinguished the promise is original. The continuance of liability of the original debtor is frequently used as a test in determining whether the contract is collateral or original.''

In view of the rule established in Virginia, it is unnecessary

to cite decisions from other States. However, in *Richardson Press* v. *Albright,* 224 N. Y. 497, 121 N. E. 362, 8 A. L. R. 1195, it was held that a stockholder of a publishing company, beneficially interested in having its publication continue without interruption, was not liable upon his oral promise to pay an overdue printing bill and to pay cash for future issues, when the creditor continued to regard the publishing company as the principal debtor and attempted to collect the bills from it.

As we have said, the decisions are not strictly uniform. Some of the cases relied on by plaintiffs in error from other jurisdictions hold that an oral promise by a stockholder, director or officer of a corporation to pay the corporation's debt is not within the statute if the consideration for the promise is of direct, personal benefit to the promisor. Others may be distinguished by reason of a difference in the facts and circumstances.

In *Davis* v. *Patrick,* 141 U. S. 479, 12 S. Ct. 58, 35 L. ed. 826, it is held that the creditor of a mine, answering for its debt in order to secure the future prompt transportation of ore, was so interested that his promise was original and supported by sufficient consideration.

In *Way* v. *Baydush, supra,* we refused to approve *Emerson* v. *Slater,* 22 How. (63 U. S.) 28, 16 L. ed. 360. The facts in *Parksley Nat. Bank* v. *Chandler,* 170 Va. 394, 196 S. E. 676, are quite different from those in the instant case.

█ Measured by the rule long established in Virginia, the promise alleged in the notice of motion under review was a collateral and not an original independent undertaking by the defendant. He did not assume an independent duty of payment which made the debt his own, irrespective of the liability of the principal debtor. This, we think, is made clear by the language of the notice.

Analyzing the notice of motion under review, it will be observed that the promise is conditional. It is alleged, in paragraph number 2, that "the defendant *would* assume voting control of Grant's, Inc., and *assume personally and pay the existing obligation* to the plaintiff, *if after ten days* * * * a purchaser had not been found who would buy defendant's entire interest in Grant's, Inc." (Italics added). All that the notice charged was that the defendant failed to carry out a promise that he would, at some later time, if a certain event occurred,

assume the debt of another, not that he made a positive promise to answer for the said debt. Again, it is further alleged that "defendant has refused, and still refuses, to pay or personally endorse *the obligation of the said Grant's, Inc., to plaintiff.*" (Italics added). This is a clear recognition of the continued liability of Grant's, Inc. That debt was not extinguished or released. There was no novation. The circumstances alleged in the notice of motion do not make out an original independent undertaking by the defendant.

The issue before the trial court was the applicability of the statute of frauds to the facts stated in the notice of motion and the stipulation of the parties. No additional facts were presented in evidence or offered to be presented. There was no conflict in the evidence to be determined by a jury, and no request was made for a jury. The answer to the question as to whether or not the promise was an original undertaking by the promisor, in consideration of a direct and personal benefit inuring to him, was, therefore, necessary to be determined by the court in the light of the circumstances alleged in the notice. The record shows that plaintiffs in error relied upon those circumstances, and accordingly submitted their cases to be heard on the pleadings. Their contention that there has not been a full trial of the issue raised by the above question is without merit.

For the foregoing reasons, we are of opinion to affirm the judgment of the trial court, sustaining the plea of the statute. Accordingly, its judgment is affirmed in each of the three proceedings under review.

*Affirmed.*