BETHESDA SALVAGE COMPANY, Inc., a corporation, and David Deckelbaum, Appellants,

v.

FIREMAN'S FUND INSURANCE COMPANY, a corporation, and Newark Insurance Company, a corporation, and New Hampshire Fire Insurance Company, a corporation, Appellees.

No. 1591.

Municipal Court of Appeals for the District of Columbia.

Argued Jan. 10, 1955.

Decided Feb. 1, 1955.

Sidney M. Goldstein, Washington, D. C., with whom Joseph D. Bulman, Washington, D. C., was on the brief, for appellants.

Ward B. McCarthy, Washington, D. C., with whom W. Cameron Burton, Thomas B. Heffelfinger and John A. Kendrick, Washington, D. C., were on the brief, for appellees.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Three insurance companies sued Bethesda Salvage Company and its president, David Deckelbaum, for return of monies overpaid on a false fire loss claim. At trial the plaintiffs offered evidence that the insured had represented verbally and in sworn proofs of claim that the loss, consisting of bales of paper destroyed by fire, was in excess of the total coverage of $6,000, and that each of the three companies paid the full amount of its liability. Plaintiffs also produced evidence that information thereafter came to light that the building involved could not have contained more than 129 tons of paper (as against the 300 tons defendants claimed had been destroyed). This evidence was presented by two insurance adjusters and corroborated by an engineer, a salvage expert, and a fire marshal.

Defendants offered no evidence, and the trial court in a written opinion found that the charge of fraud had been established and ordered judgment against defendants for a total of $2,912, to be apportioned in indicated amounts among the three insurers.

In the first error assigned it is said that Mr. Deckelbaum should have been freed of personal liability. Deckelbaum was president of the defendant corporation and owned half of its stock. It was he who had all the dealings with the insurers, made all the representations in connection with the loss, and signed the proofs of claim. His tortious conduct, though committed in behalf of the corporation, also created personal and individual liability on his part. McCandless v. Furlaud, 296 U.S. 140, 56 S.Ct. 41, 80 L.Ed. 121; Cox v. DeSoto Crude Oil Purchasing Corp., D.C.La., 55 F.Supp. 467; Palomino Mills v. Davidson Mills Corporation, 230 N.C. 286, 52 S.E.2d 915; Pennington Trap Rock Co. v. Pennington Quarry Co., 38 A.2d 869, 22 N.J.Misc. 318; 3 Fletcher Cyclopedia, Corporations § 1135.

Appellants contend that the charge of fraud was not sustained. In this claim there is no merit whatever. The evidence, abundantly corroborated and entirely uncontradicted, was that Deckelbaum represented that 300 tons of paper had been destroyed or damaged in the fire, whereas actual measurements established that the building could not have contained more than half that amount of paper. (The opinions varied and included one statement that the maximum content would be 56 tons.) Deckelbaum's verbal representations and his sworn proofs of claim could not have been, as counsel urge, mere matters of opinion. They were submitted as true and actual weights. Whether made deliberately or without knowledge of their truth or falsity, they justified a finding of fraud. Spargnapani v. Wright, D.C.Mun.App., 110 A.2d 82, and cases there cited.

But, appellants say, there was no showing that the insurance companies relied on Deckelbaum's statement. It is true that before approving the claim the adjuster obtained the opinion of an expert in the waste paper business and was told that the building could have contained 300 tons of paper. But the adjuster testified specifically that he relied on Deckelbaum's statement as well as his own investigation, and "that re- lying upon the statements of Deckelbaum and his sworn Proof of Loss affidavits, the claims were placed in line for payment." This testimony supported the judge's finding that the excessive payments were made in reliance on Deckelbaum's false and fraudulent claims.

Finally we consider an assignment of error dealing with admission of evidence. The fire marshal testified that in the regular course of his duties he investigated the fire and ascertained the amount of fire loss paid to the insured; that Deckelbaum told him there had been 300 tons of paper in the building at the time of the fire; that his own measurements satisfied him that the structure would not hold more than 56 tons of paper; that he then asked Deckelbaum what he had done with the rest of the paper and Deckelbaum told him he had sent about 30 tons to the Montgomery County dump. The fire marshal then testified over objection that the man in charge of the dump had told him that defendant company had not dumped any debris from the fire at the dump. This was clearly hearsay, as appellees concede; but the witness immediately followed it with this statement, "in addition that in the course of his official investigation he determined that Deckelbaum had not delivered Thirty (30) tons of paper to the Montgomery County dump." Under the circumstances, and the trial having been without a jury, we think the admission of the one piece of hearsay evidence could not have prejudiced defendants. We have held, citing a number of Federal decisions, that in nonjury cases the reception of inadmissible evidence does not of itself constitute reversible error where there is other evidence to support the judge's findings. Du Bose v. Drummond, D.C.Mun.App., 95 A.2d 57. That is the situation here. The major question was not whether defendants sent some or any paper to the dump; it was whether the building could have contained 300 tons of paper. A negative answer to that question was provided not only by the fire marshal but also by four other witnesses.

Affirmed.